UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
PAUL GORDON AZZARA,            )
            Plaintiff,         )
                               )
            v.                 )   C.A. No. 04-40220-NMG
                               )
DAVID WINN, et al.,            )
        Defendants.            )
```

<u>MEMORANDUM AND ORDER</u>

For the reasons stated below, (1) plaintiff's Motion to Proceed *in forma pauperis* (Docket No. 2) is denied without prejudice; (2) plaintiff's Motion for appointment of counsel (Docket No. 3) is denied without prejudice; 3) plaintiff's request for immediate injunctive relief is denied, and (4) if plaintiff files a new Application to proceed *in forma pauperis*, he is directed to also demonstrate good cause why this action should not be dismissed for the reasons stated below.  Additionally, if plaintiff seeks to raise his claims in a petition for writ of habeas corpus pursuant to 28 U.S.C. §2241, he shall file a separate action with a separate petition, accompanied by a completed Application to Proceed *in forma pauperis* accompanied by his certified prison account balance, or alternatively he shall pay the $5.00 filing fee.

<u>BACKGROUND</u>

On October 22, 2004, plaintiff Paul Azzara, a prisoner at FMC Devens, in Ayer, MA, submitted for filing a fourteen (14)

page handwritten complaint accompanied by a Motion for

Appointment of Counsel (Docket No. 3) and a Motion to Proceed

*in forma pauperis* (Docket No. 2), claiming he is indigent and

cannot pay the costs and fees associated with this action, but

otherwise providing no specific financial information or a

certified prison account balance.

In his complaint, Azzara asserts his action is brought

under 42 U.S.C. §1983[1] and 28 U.S.C. §2241, for Eighth

Amendment violations for cruel and unusual punishment.  He

also seeks immediate injunctive relief to get him out of

segregation (i.e., the Special Housing Unit ("SHU") a/k/a "the

"hole").  The defendants are David L. Winn, the warden of FMC

Devens, Lt. Colon, the Acting Lieutenant, and Dorne Smith, an

inmate at FMC Devens.

Plaintiff claims that he has a direct appeal of his

criminal conviction, pending in the Second Circuit (04-0809-

---

[1]Because §1983 applies only to state actors and not
federal actors, Plaintiff presumably is bringing his suit for
damages for alleged violations of his constitutional rights by
federal employees, under the doctrine of <u>Bivens v. Six Unknown
Agents of the FBN</u>, 403 U.S. 388 (1971). <u>Bivens</u> suits only can
be brought against federal officers in their individual
capacities. <u>See</u> <u>Rivera v. Riley</u>, 209 F.3d 24, 28 (1st Cir.
2000); <u>Affiliated Prof'l Home Health Care Agency v. Shalala</u>,
164 F.3d 282, 286 (5th Cir. 1999); <u>Buford v. Runyon</u>, 160 F.3d
1199, 1203 (8th Cir. 1998); <u>Sanchez-Mariani v. Ellingwood</u>, 691
F.2d 592, 596 (1st Cir. 1982).

CR)[2], and his placement in the SHU denies him access to his legal materials and access to the law library.  As a result, he is unable to prepare his *pro se* supplemental appellate brief, which he claims was due October 29, 2004 (Compl. ¶8).

The crux of Azzara's claims stem from an incident with the law library clerk, Dorne Smith, who is also an inmate at FMC Devens.  He claims that on October 9, 2004, he was called to the Lieutenant's office to answer a charge brought by Dorne Smith that Azzara was "bothering" him (Compl. ¶11).  A witness was called to testify and Smith himself testified he did not feel his life was in danger.  The following day, Azzara went to the law library  to work on his appeal, and he claims Smith refused to provide him any assistance, stating "you're not supposed to be talking to me Paul." (Compl. ¶12).  The next day, October 11, 2004, a similar encounter took place.  The following day, October 12, 2004, Azzara was "sent to the 'Special Housing Unit' or 'Hole' and is currently under investigation for "Bothering" Mr. Smith." (Compl. ¶14). Plaintiff claims he is being held against his will and is denied "all access to legal materials, papers, and any and all

---

[2]Azzara also claims to be awaiting the decision from the United States Supreme Court pertaining to the applicability of the federal guidelines.

3

access to a law library, telephone, typewriter, even pens, and is being denied his right to file his appeal from conviction." Compl. ¶14).  Azzara claims that "bothering" an inmate is insufficient grounds to remove him from the general population and place him in a "dungeon" for 24 hours a day.  He further claims that the denial of his legal materials and law library access constitutes cruel and unusual punishment.

Finally, Azzara seeks an Order enjoining the prison from housing him in the SHU, or, in the alternative, he seeks to compel the prison to provide a reason why he is being held in the SHU, so an outside attorney could advocate for him (Compl. ¶18).

Azzara requests relief in the form of access to legal materials and papers, a typewriter, phone, mailing supplies, writing supplies, and typing supplies, as well as $500,000 in damages for cruel and unusual punishment, $2000 per day for every day since October 12, 2004 that he remains in the SHU, and $10 million dollars for actual, compensatory and punitive damages for being prevented from filing his direct appeal.

<u>DISCUSSION</u>

I.  <u>Plaintiff Must Either Pay the Filing</u>
    <u>Fee or Submit a Certified Prison Account Statement</u>

A prisoner filing a civil action in this Court must either (1) pay the $150.00 filing fee for such actions or (2)

4

file an application to proceed *in forma pauperis* with a
certified prison account statement. <u>See</u> 28 U.S.C. § 1914
($150.00 filing fee); §1915 (proceedings *in forma pauperis*).

Azzara filed a Motion to proceed *in forma pauperis* but it
did not contain the requisite financial information as that
set forth in the standard "Application to Proceed Without
Prepayment of Fees" form. Additionally, Azzara did not submit
a certified prison account statement for the 6-month period
immediately preceding the complaint as required by Section
1915. <u>See</u> 28 U.S.C. §1915(a)(1).

Although prisoner litigants may file applications for fee
waiver, under §1915, they are only excused from having to pay
the entire filing fee up-front and the Court must assess an
initial partial filing fee, with periodic installment payments
to be made thereafter. <u>Id.</u> §1915(b)(1).[3] The Court cannot
assess an initial partial filing fee without plaintiff's
certified prison account statement. Thus, Azzara's motion to
waive the filing fee is deficient, and is therefore denied
without prejudice to his re-filing a completed Application to

---

[3]After the assessment of an initial partial filing fee,
prisoner litigants are obligated to make monthly payments
equaling 20% of the preceding month's income each time the
account exceeds $10 until the statutory filing fee is paid in
full.  28 U.S.C. §1915(b)(2).

Proceed Without Prepayment of Fees, accompanied by his certified prison account statement, within forty-two (42) days of the date of this Order.  The clerk shall provide a blank Application form to Azzara, along with this Order.

If Azzara submits the $150.00 filing fee in its entirety, or files a new, completed Application to proceed *in forma pauperis*, accompanied by a certified prison account statement, he is also directed to demonstrate good cause, within forty-two (42) days, why this action should not be dismissed for the reasons contained in this Memorandum and Order.  If plaintiff fails to submit a new application or to pay the filing fee, this action shall be dismissed.

II.  <u>Plaintiff's Complaint is Subject to Screening</u>

Because Azzara is a prisoner, he also is advised that he is subject to the provisions of the Prison Litigation Reform Act.  The Prison Litigation Reform Act of 1995 ("PLRA"), Title VIII of Pub.L. 104-134, 110 Stat. 1321-1375 (1996), enacted several provisions which grant this Court the authority to screen and dismiss prisoner complaints.  <u>See</u> 28 U.S.C. §1915 (proceedings *in forma pauperis*); 28 U.S.C. §1915A (screening of suits against governmental officers and entities).

Section 1915 authorizes federal courts to dismiss actions in which a plaintiff seeks to proceed without prepayment of

6

fees if the action lacks an arguable basis either in law or in
fact, <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989), or if the
action fails to state a claim on which relief may be granted
or seeks monetary relief against a defendant who is immune
from such relief.  <u>See</u> 28 U.S.C. 1915(e)(2).  <u>In forma
pauperis</u> complaints may be dismissed <u>sua</u> <u>sponte</u> and without
notice under Section 1915 if the claim is based on an
indisputably meritless legal theory or factual allegations
that are clearly baseless.  <u>Id.</u>; <u>Denton v. Hernandez</u>, 504 U.S.
25, 32-33 (1992).

Section 1915A also authorizes the Court to review
prisoner complaints in civil actions that seek redress from a
governmental entity or officers or employees of a governmental
entity and to dismiss the action regardless of whether or not
the plaintiff has paid the filing fee, if it lacks an arguable
basis in law or fact, fails to state a claim, or seeks relief
from a defendant immune from such relief.  28 U.S.C. §1915A.

In this case, even construing his pleadings generously,
<u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972), Azzara's action is
subject to dismissal for the reasons stated below.

    III.     <u>Plaintiff's Complaint is Subject to Dismissal</u>

        A.  <u>Section 1997e Authorizes the Court to Dismiss
An Action Without Requiring Exhaustion of Remedies</u>

Section 1997e(a) provides that no action shall be brought with respect to "prison conditions" under §1983 by a prisoner "until such administrative remedies as available are exhausted." 42 U.S.C. §1997e(a). Prison conditions, for purposes of Section 1997e(a), have been broadly interpreted to include "all inmate suits about prison life." Porter v. Nussle, 534 U.S. 516, 532 (2002). Thus, plaintiff's claims about his placement in the Special Housing Unit involve "prison conditions" and are subject to the exhaustion of remedies requirement. See id.; accord Menina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 34 (1st Cir. 2002).

The fact that Azzara seeks emergency injunctive relief is insufficient to overcome the exhaustion requirement. See Booth v. Churner, 532 U.S. 731, 740 (2001) (a prisoner must exhaust all available administrative processes regardless of the relief offered through those procedures); accord Menina-Claudio, 292 F.3d at 35 (no futility exception to the exhaustion requirement); cf. Casanova v. Dubois, 289 F.3d 142, 147 (1st Cir. 2002) (citation omitted) (although the exhaustion requirement is not jurisdictional, it is mandatory). The failure to exhaust stands alone as an adequate grounds to dismiss this action.

However, because a Court is also free to dismiss claims

8

for failure to state a claim under §1997e(c)(2), without first requiring exhaustion of administrative remedies, I will proceed through this Memorandum to advise plaintiff that his claims are subject to dismissal and direct him to demonstrate good cause why they should not be dismissed on the merits. See 42 U.S.C. §1997e(c)(2).

B. <u>Plaintiff Lacks A Liberty Interest In Remaining In the General Prison Population</u>

Azzara contends that his rights were violated because he was transferred to segregation for "bothering" another inmate. (Compl. ¶8). As a result, Azzara claims he is denied access to his legal materials and such things as pens, a typewriter, a telephone, papers, and access to the law library. In his complaint, Azzara alleges an Eighth Amendment/cruel and unusual punishment violation, but does not specifically allege Due Process violations. To the extent, however, that plaintiff's challenges to his placement in segregation and the attending lost privileges are more properly raised in a Due Process context, those are subject to dismissal because plaintiff has not shown that his placement in segregation implicated any liberty interest for purposes of the Fourteenth Amendment.

In order to establish a violation of procedural due process based on his placement in segregation, Azzara must allege (1) that he had a protected liberty interest in

9

remaining in the general population, and (2) that the defendants' actions adversely affected those interests without the protections of due process granted by the Fourteenth Amendment.  See Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989).  Liberty interests protected by the Fourteenth Amendment may arise directly from the Due Process Clause itself or from the laws of the states.  Thompson, 490 U.S. at 460; Hewitt v. Helms, 459 U.S. 460, 466 (1983). However, "lawfully incarcerated persons retain only a narrow range of protected liberty interests."  Helms, 459 U.S. at 467.

     1.  The Due Process Clause

The Due Process Clause, standing alone, does not create in plaintiff a protected interest in remaining in the general prison population and to the extent that plaintiff's claims are based solely on the Due Process clause, they are subject to dismissal.  Helms, 459 U.S. at 468 (1983) (inmate has no liberty interest in avoiding "administrative" (non-punitive) segregation from the general prison population); Montanye v. Haymes, 427 U.S. 236, 242 (1976) (as long as the conditions of confinement to which prisoner is subjected are within the sentence imposed and are not otherwise violative of the Constitution, Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial

10

oversight).

      2.  <u>Massachusetts Statutes or Regulations</u>

A state may create by statute or regulation an interest protected by the Due Process Clause even though the same interest is not among those protected by the Clause standing alone.  <u>See</u> <u>Hewitt</u>, 459 U.S. at 470-71.  However, as the Supreme Court made clear in <u>Sandin v. Connor</u>, 515 U.S. 472 (1995), while such language may create interests that are protected by the Due Process Clause, these liberty interests "will generally be limited to freedom from restraint which ...imposes <u>atypical and significant</u> hardship on the inmate in relation to the ordinary incidents of prison life."  <u>Id.</u> at 484 (emphasis added).

Here, Azzara does not invoke any Massachusetts statute or regulation. Even assuming the existence of a Massachusetts statute or regulation that purportedly creates a liberty interest in remaining in the general prison population, Azzara's claims still are subject to dismissal because he has failed to allege facts demonstrating that his placement in segregation, since October 12, 2004 constituted an "atypical, significant deprivation."  <u>See</u> <u>Sandin</u>, 515 U.S. at 486.

Azzara does not allege that the defendants' actions in any way affected the duration of his sentence.  <u>See</u> <u>id.</u> at 515 U.S. at 487.  Nor does he allege that his placement in

11

segregation (administrative or punitive) and his loss of privileges created conditions that are different from those ordinarily experienced by large numbers of other inmates serving their sentences in customary fashion.  Thus, his claims are subject to dismissal.  See Portley-El v. Brill, 288 F.3d 1063, 1066-1067 (8th Cir. 2002) (lengthy pleadings did not allege a liberty interest, did not describe conditions of confinement in punitive segregation or administrative segregation, and did not allege that those conditions were atypical and significant hardships in relation to the ordinary incidents of his prison life); Dominque v. Weld, 73 F.3d 1156, 1159 (1st Cir. 1996) (affirming dismissal for failure to state a claim; prisoner had no liberty interest in remaining in work release program); McGrath v. Johnson, 67 F. Supp. 2d 499, 513 (E.D. Pa. 1999) (placement in administrative segregation); Everson v. Nelson, 941 F. Supp. 1048, 1050 (D. Kan. 1996) (same).  Cf. Shabazz v. Cole, 69 F. Supp. 2d 177, 189-190 (D. Mass. 1999) (no liberty interest re:  loss of library privileges).

Finally, Azzara may have at this time abandoned his claim by agreeing to remain in protective custody.

C.  Access to Legal Materials and Law Library

Plaintiff's contention that his placement in the Special

12

Housing Unit against his will denies him access to the law
library and legal materials also fails to state a claim,
because he has failed to allege any "actual injury."  In <u>Lewis
v. Casey</u>, 518 U.S. 343 (1996), the Supreme Court held that in order
to establish a violation of the "right of access" to the courts, a
plaintiff must allege "actual injury."  <u>See</u> <u>id.</u> at 349.  "Actual
injury," derives from the doctrine of standing and requires a
prisoner to demonstrate that any alleged shortcomings in a legal
library or assistance program hindered his efforts to pursue a legal
claim involving direct or collateral attacks on sentences or
challenges to conditions of confinement.[4]  <u>Id.</u> at 349, 354-355.  Any
impairment of any other litigating capacity is an "incidental (and
perfectly constitutional) consequence of conviction and
incarceration."  <u>Id.</u> at 355.

While Azzara does state he has a direct appeal of his
conviction pending, he has failed to sufficiently demonstrate that as
a result of his inability to access the law library, he has suffered
any "actual injury" to a legal claim involving a direct or collateral
attack to his sentence(s) or a challenge to conditions of

---

[4]The <u>Lewis</u> court listed as examples of "actual injury" an
allegation that a complaint was dismissed for failure to
satisfy a technical requirement which, because of deficiencies
in the prison's legal assistance facilities, he could not have
known or an allegation that a prisoner was unable to bring an
action to court due to the inadequacies in the law library.
<u>Id.</u> at 351.

confinement.  His allegations are vague and conclusory and provide no detail or specifics of any alleged actual injury or the exact nature of any legal claims involved. Azzara currently has pending a direct appeal, and it appears he has counsel to represent him in that appeal.  He contends, however, that he intended, with leave of court, to file an "additional, supplemental pro se brief" in connection with his appeal, within weeks of his being placed in segregation, (Compl. ¶8), and that he is unable to prepare such a brief while in segregation.  There is no indication however, that such a filing was mandated by the Appellate Court, such that failure to file a further brief would adversely effect his appeal or result in a dismissal with prejudice.  Moreover, there is no indication that plaintiff has sought, and was denied, an extension of the briefing deadline. Further, the fact that he was able to file the instant action belies any claim he may have of inability to have meaningful access to the courts in order to make such a request.  Thus, Azzara could have sought an extension of time in which to file his supplemental brief.

Finally, upon inquiry, this Court was orally advised by counsel at FMC Devens that on or about October 20, 2004, Azzara received his legal materials and a green duffle bag containing paperwork, from his former location, and the reasons for delay was that Azzara failed to ask the appropriate Devens personnel for his belongings.  Further,

14

the Court was advised that Azzara does have access to the law library, and he is allowed to make telephone calls and copies, and to speak with his attorney. To the extent Azzara requires other materials, he would be provided with those upon request. Moreover, FMC Devens counsel advised that Azzara 's counsel had actually filed or will file Azzara's supplemental brief in connection with the appeal. His counsel further advised FMC Devens counsel that Azzara no longer had any problems with access either to legal materials or to the courts. Thus, it appears Azzara's complaints may have been resolved informally through internal channels within the prison system, and it is unclear whether he continues to press his claims in this Court at this time.

In view of the factors outlined above, Azzara has thus failed to state a cognizable claim. See Graham v. Perez, 121 F. Supp.2d 317, 323-324 (S.D.N.Y. 2000) (dismissing plaintiff's claims about denial of access to typewriters while in special housing unit for failure to allege injury); accord Cookish v. Cunningham, 787 F.2d 1, 5 (1st Cir. 1986) (prisoner did not allege any specific harm resulting from temporary restrictions). See also Cody v. Weber, 256 F.3d 764, 770 (8th Cir. 2001) (affirming summary judgment dismissing "right of access" claim where plaintiff made vague allegation of actual injury); Wilson v. Blankenship, 163 F.3d 1284, 1291 (11th Cir. 1998) (affirming summary judgment where plaintiff's claim did not

15

involve a direct or collateral attack or civil rights case).

D. <u>Access to Non-legal Materials</u>

Similarly, to the extent Azzara claims the denial of access to non-legal materials such as pens[5], a typewriter, and a telephone, amounts to a denial of access to the courts, such claims are not cognizable.  Although inmates are not stripped of their constitutional rights simply by virtue of their imprisonment, <u>Wolff v. McDonnell</u>, 418 U.S. 539, 555-56 (1974), they retain only those rights consistent with legitimate penological objectives and reasonable limitations on a prisoner's constitutional rights are permitted.  <u>See, e.g.</u>, <u>Pell v. Procunier</u>, 417 U.S. 817, 822 (1974), <u>Turner v. Safely</u>, 482 U.S. 78, 88 (1987).  <u>Jones v. Franzen</u>, 697 F.2d 801, 803 (7th Cir. 1983) ("[B]road as the constitutional concept of liberty is, it does not include the right to xerox."); <u>Harrell v. Keohane</u>, 621 F.2d 1059, 1060 (10th Cir. 1980) (prisoner's right of access to court does not include the right of free unlimited access to a photocopying machine); <u>Brinson v. McKeeman</u>, 992 F. Supp. 897, 910 (W.D. Tex. 1997) (stating that "it is well-established in this Circuit that access to typewriters and copy machines are not an essential part of the right

─────────────────

[5]While in segregation, Azzara is prohibited from possessing a pen, for security reasons.  However, Azzara is provided with a pencil and paper. His complaint to this Court was written with pencil.

to access to the courts.").

E.    <u>Plaintiff Is Not Entitled to Injunctive Relief</u>

In his complaint, Azzara seeks immediate injunctive relief to remove him from segregation.  A party seeking a preliminary injunction bears the burden of demonstrating (1) a likelihood of success on the merits; (2) a potential for irreparable injury; (3) that the balance of the relevant equities favors him; and (4) the public interest would not be adversely affected by an injunction. <u>See</u> <u>Narragansett Indian Tribe, et al., v. Guilbert</u>, 934 F.2d 4, 5 (1st Cir. 1991).   The Court will not construe Azzara's motion for emergency relief as a request for a preliminary injunction because preliminary injunctions may <u>not</u> be issued without notice to the adverse party, and the complaint has not been served on the defendants.  <u>See</u> Fed. R. Civ. P. 65(a)(1).  The Court will construe the request for injunctive relief as a motion for an <u>ex parte</u> restraining order.  <u>See</u> Fed. R. Civ. P. 65(b).

The same four-factor test for preliminary injunctions also has been extended to temporary restraining orders.  <u>Levesque v. State of Maine</u>, 587 F.2d 78, 80 (1st Cir. 1976); <u>accord</u> <u>Latin American Music Co. v. Cardenas Fernandez & Assoc., Inc.</u>  No. 00-1443, 2001 WL 196742, at *1 n. 2 (1st Cir. Feb. 23, 2001) (same); <u>see</u> <u>Butler v. Maine Sup. Jud. Ct.</u>, 758 F. Supp. 37, 38 (D. Me. 1991) (applying criteria).

17

A party seeking an <u>ex parte</u> temporary restraining order must allege, in an affidavit or verified complaint, that his injury or loss is "immediate and irreparable" and will occur before the adverse party or that party's attorney can be heard in opposition to the motion.  <u>Id.</u>[6]  Further, the party's attorney (or the party himself, if proceeding *pro se* as here) must certify to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required.  <u>Id.</u>

As an initial matter, plaintiff has not certified his efforts to give notice to the named defendants in this action.  The failure to do so is grounds in and of itself for denial of the motion.  <u>See Thompson v. Ramirez</u>, 597 F. Supp. 726, 726 (D. P.R. 1984) (denying temporary restraining order, in part, where there had been no

---

[6]Rule 65(b) states that:

> A temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required.

Fed. R. Civ. P. 65(b).

certification to court in writing, of the efforts, if any, of
notification to adverse parties).

More importantly, however, at this juncture, for the reasons
discussed in this Memorandum and Order, plaintiff has not
demonstrated a likelihood of success on the merits.  Establishing a
likelihood of success on the merits is "critical" to a
successful application for preliminary injunctive relief, and
a party who is unable to convince the trial court that they
will probably succeed on the merits is not eligible for
interim injunctive relief.  Weaver v. Henderson, 984 F.2d 11,
12 (1st Cir. 1993).

Again, as a practical matter, it appears that plaintiff may
have dispensed with his request for injunctive relief, and resolved
the issues informally within FMC Devens.  This Court has been orally
advised by FMC Devens counsel that Azzara remains in protective
custody for safety and security reasons, and, as of November 30,
2004, this appears to be an uncontested issue, since Azzara has
requested to remain in administrative protective custody, alone, and
not be housed in the general population or be given a bunkmate.  FMC
Devens personnel re-assess the issues presented by Azzara's custodial
status on a weekly basis, so it would appear Azzara would have the
opportunity to renew the issue on a timely basis.

F.   No Eight Amendment violation established.

19

Azzara claims his Eighth Amendment rights were violated as a result of his segregation and lost privileges, however, he fails to state with any specifics those facts which would establish such a violation.  Moreover, for the reasons stated above, Azzara has not established any Due Process violations as a result of segregation and lost privileges, and thus the Eighth Amendment is not implicated here.

G.    Plaintiff fails to state a claim against Defendants Dorne Smith and Lt. Colon and David Winn

1. Lt. Colon

Azzara's claims against Lt. Colon are subject to dismissal for failure to state a claim upon which relief can be granted.  Rule 8(a) of the Federal Rules of Civil Procedure requires a plaintiff to include in his complaint, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This standard sets forth a relatively low pleading threshold, and generally, a court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations contained in the complaint.  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002).

Even if Azzara's claim is presumed to be brought under 28

U.S.C. § 1983 and <u>Bivens v. Six Unknown Named Agents</u>, 403 U.S. 388 (1971), the complaint nevertheless fails to meet even the low pleading threshold.  The only allegation of any action by Colon is that he investigated inmate Smith's charges against Azzara.  Azzara does not state that Colon was responsible for his placement in segregation, or that such action by Colon violated his civil rights.

     2. <u>Dorne Smith</u>

Similarly, with respect to Azzara's claims against inmate Dorne Smith, he fails to establish any affirmative act by inmate Smith which would constitute a cognizable claim. While he alleges Smith filed a "false claim", Azzara virtually concedes that he made threats to have Smith fired from his job, and that he was "berating" and "bothering" Smith.  Azzara blames Smith for being placed in "the hole", but fails to show how Smith was in any way responsible for the prison's decision to place him in segregation, or that he had any authority to do so.  Moreover, Azzara conceded that, during the investigation by officials, Smith told the truth when asked whether he feared for his safety, and Smith answered in the negative.

Finally, even if co-inmate Smith falsified a charge against Azzara as he claims, this would constitute a state law cause of

action, and does not in an of itself invoke federal subject matter
jurisdiction over the claim.  Under the circumstances presented here,
in view of the deficiencies in his §1983 claims for relief, the
Court, as a matter of discretion, would decline to exercise
supplemental jurisdiction over Azzara's claim against inmate Smith[7].

### 3. David Winn

To the extent plaintiff brings this action against Warden
David Winn, a Bivens claim seeking monetary damages is
unavailable against federal officials sued in their official
capacities.  Howe v. Bank for Intern. Settlements, 194 F.
Supp. 2d 6, 30 (D. Mass. 2002) (citing Ruiz Rivera, 209 F.3d
at 28).  Respondeat superior is not a viable theory of Bivens
liability. Capozzi v. Department of Transp., 135 F.Supp.2d 87,
98 (D.Mass. 2001) citing Ruiz v. Riley, 209 F.3d 24 (1st Cir.

---

[7]Because plaintiff's federal claims are subject to
dismissal, grounds do not appear to exist for independent
federal subject-matter jurisdiction over any state-law claim
in plaintiff's complaint.  Of course, in the absence of such
jurisdiction, the Court may still exercise supplemental
jurisdiction over the state law claim.  28 U.S.C. §1367(a).
The exercise of such jurisdiction, however, is discretionary,
United Mine Workers of America v. Gibbs, 383 U.S. 715, 726
(1966), and a federal court may decline to exercise
supplemental jurisdiction over a plaintiff's state law claim
when the federal claims drop out of the action before trial.
Martinez v. Colon, 54 F.3d 980, 990 (1st Cir. 1995) (dismissal
of state claim appropriate when no "legitimate" federal
question remained in advance of trial); accord Rose v.
Baystate Med. Ctr., Inc., 985 F. Supp. 211, 218-219 (D. Mass.
1997).

2000). Rather, a supervisor is liable only for his own acts
and omissions and faces no vicarious liability for the acts of
his subordinates. <u>See</u> <u>id</u>. There is supervisory liability only
if (1) there is subordinate liability, and (2) the
supervisor's act or omission is affirmatively linked to the
constitutional violation caused by the subordinate. <u>Id</u>. <u>citing</u>
<u>Seekamp v. Michaud</u>, 109 F.3d 802, 808 (1st Cir. 1997).  Here,
Azzara has not made any factual allegations to demonstrate
that David Winn had anything directly or indirectly to do with
the decision to place him in segregation. Therefore,
plaintiff's claims against Defendant Winn are subject to
dismissal.

H.  <u>The request for habeas relief pursuant to §2241 is denied
    without prejudice</u>.

Azzara filed his complaint claiming both a §1983 cause of
action based on Eighth Amendment violations, and a §2241 habeas
petition.  Because, however, Plaintiff seeks monetary damages and
because he seeks to include inmate David Winn, Dorne Smith and Lt.
Colon as defendants in this action, this Court will treat Plaintiff's
complaint as a civil action and <u>not</u> a habeas petition. In light of
the denial of the request for injunctive relief, and in light of the
indications that Azzara is content with remaining in protective
custody status at the present time, there is no prejudice to him in

23

fashioning his claims for relief in this fashion.  Moreover, in light
of the fact that Azzara has not paid the filing fee for either a
civil rights action ($150.00) or a habeas petition ($5.00), and the
fact that he will be given an additional forty-two (42) days to re-
file an Application to proceed *in forma pauperis* (thus making the
election whether he wishes to pursue one type of claim or the other,
or both), a dismissal without prejudice is appropriate at this
time.

     IV.   <u>Appointment of Counsel</u>.

     Plaintiff has also filed a motion for appointment of
counsel.  Under 28 U.S.C. §1915(e)(1), the Court "may request
an attorney to represent any person unable to afford counsel."
28 U.S.C. §1915(e)(1).  However, a civil plaintiff lacks a
constitutional right to free counsel.  <u>DesRosiers v. Moran</u>,
949 F.2d 15, 23 (1st Cir. 1991) (citations omitted).

     In order to qualify for appointment of counsel, a party
must be indigent and exceptional circumstances must exist such
that the denial of counsel will result in fundamental
unfairness impinging on the party's due process rights.  <u>Id.</u>
In determining whether there are exceptional circumstances
sufficient to warrant the appointment of counsel, a court must
examine the total situation, focusing on the merits of the
case, the complexity of the legal issues, and the litigant's

ability to represent himself.  *Id.* at 24 (citations omitted).

The motion for counsel will be denied in this case for two reasons.  First, by failing to submit the certified statement of prison account required by §1915(a)(2), plaintiff has not yet provided sufficient information for the court to make a determination of indigency.  Second, "exceptional circumstances" do not appear to exist in this case, primarily because large portions of this action appear ripe for dismissal, but also because of the relative lack of complexity of the legal issues involved.  *See id.*  Thus, plaintiff's request for appointment of counsel is denied.

CONCLUSION

Based on the foregoing, it is hereby ORDERED:

1.  Plaintiff's Motion to Proceed *in forma pauperis* (Docket No. 2) is denied without prejudice;

2.  Plaintiff's Motion for appointment of counsel (Docket No. 3) is denied without prejudice;

3.  Plaintiff's request for immediate injunctive relief is denied;

4.  The Clerk is directed to send plaintiff an Application to Proceed Without Prepayment of Fees and Affidavit. If plaintiff wishes to proceed with this action, he shall, within forty-two (42) days of the date of this Order, (1) file a fully completed Application accompanied by his prison account statement and (2) demonstrate good cause why this action should not be dismissed in its entirety for the reasons stated above.

5.  If Plaintiff wishes to file a petition for writ of habeas

corpus pursuant to 28 U.S.C. §2241, he shall submit a
petition along with a completed Application to Proceed Without
Prepayment of Fees an Affidavit, accompanied by his prison
account statement, or he shall pay the $5.00 filing fee.

SO ORDERED.

Dated at Boston, Massachusetts, this 14th day of December,
2004.

                              /s/ Nathaniel M. Gorton
                              NATHANIEL M. GORTON
                              UNITED STATES DISTRICT JUDGE